**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

LEACHMAN CATTLE OF COLORADO,
LLC, a Colorado Limited Liability
Corporation, and VERIFIED BEEF, LLC, a
Montana Limited Liability Corporation,

        Plaintiffs,

    v.

AMERICAN SIMMENTAL ASSOCIATION,
a Montana Association, WADE R. SHAFER,
individually, WILL TOWNSEND,
individually,

        Defendants.

---

## COMPLAINT AND REQUEST FOR PRELIMINARY INJUNCTION

---

Plaintiffs, Leachman Cattle of Colorado, LLC ("Leachman Cattle") and Verified Beef, LLC ("Verified Beef") (collectively "Plaintiffs"), file this Original Complaint and Request for Preliminary Injunction against Defendants American Simmental Association ("ASA"), Dr. Wade R. Shafer, individually, and Mr. Will Townsend, individually (collectively "Defendants").

### I. PARTIES

1. Plaintiff, Leachman Cattle of Colorado, LLC is a Colorado limited liability company with its principal place of business at 5100 ECR 70, Wellington, Colorado 80549.

2. Plaintiff, Verified Beef, LLC is a Montana limited liability company with its principal place of business at 209 S. 19th Ave., Suite 3, Bozeman, Montana 59718.

3.    Upon information and belief, Defendant, American Simmental Association is a Montana mutual benefit corporation with its principal place of business at 1 Simmental Way, Bozeman, Montana 59715-9733.

4.    Upon information and belief, Defendant, Dr. Wade R. Shafer, is an individual residing at 3944 Baxter Lane, Unit 6, Bozeman, Montana 59718-8072.

5.    Upon information and belief, Defendant, Mr. Will Townsend, is an individual residing at 503 W. Olive Street, Bozeman, MT 59715-4549.

## II.  JURISDICTION AND VENUE

6.    This Court has personal jurisdiction because Defendants have maintained continuous and systematic business activities in the State of Colorado.  This Court has personal jurisdiction because Defendants have committed, and continue to commit, in this judicial district certain acts that breach a non-disclosure agreement between Defendants and Verified Beef, and acts of tortious interference with business relations of the Plaintiffs.  Furthermore, Defendants have purposefully directed their activities at the residents of Colorado, and have committed and continue to commit, or have contributed and continue to contribute to, acts of patent infringement in this judicial district as alleged in this Complaint.

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that the cause of action for patent infringement arises under the patent laws of the United States, 35 U.S.C. §§ 271 and 281-285, and the cause for Lanham Act violation arises under 15 U.S.C. § 1125 (a).

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

### III. FACTUAL BACKGROUND

9.      Plaintiffs, Leachman Cattle and Verified Beef, pioneered the concept of determining the relative economic value of a group of existing commercial calves and reporting that value to the owners and potential buyers of that group.  Prior to Plaintiffs' inventions, economic selection indices predicted the value of a potential breeding animal's offspring.  By contrast, the Plaintiffs' proprietary information and patented method and systems estimate the value of an existing group of animals.  Plaintiffs have invested a tremendous amount of time, resources, and capital in developing and refining this proprietary technology, and have developed commercial products embodying this invention, including the Reputation Feeder Cattle® and Genetic Merit Scorecard® programs (collectively "Programs").  Plaintiffs have an issued U.S. Patent and several pending patent applications covering aspects of this technology.

10.      Early last year, starting on or about March 19, 2013, Plaintiffs distributed several introductory press releases and marketing materials regarding their Programs.  These materials, while not providing detailed content, invited ranchers, feed yards, and buyers in the cattle industry to contact the Plaintiffs for further information.  *See* Declaration of Tim J. Watts ("Watts Decl."), attached hereto as Exhibit A.  *Also* s*ee* Affidavit of Leland Leachman ("Leachman Aff."), attached hereto as Exhibit B.

11.      On or about April 12, 2013, Plaintiffs and Defendants had an introductory meeting regarding the Plaintiffs' Programs.  Only publicly available information was shared with the Defendants at this meeting.  Watts Decl. ¶7.  Defendants acknowledged that they had performed some work on a program but had shelved the project.  Plaintiffs refused to share any

confidential and proprietary information regarding the Programs until a confidentiality and non-disclosure agreement was executed by Defendants.  Watts Decl. ¶7.

12.    On April 13, 2013, Plaintiffs filed their first patent application—U.S. Provisional Patent Application Serial No. 61/811,720—directed towards their proprietary method and systems for determining the relative market value of a sale group of livestock based on genetic merit estimates and other information associated with the sale group.

13.    On or about May 10, 2013, representatives of the Plaintiffs and Defendants met in-person and via electronic means at the offices of Verified Beef in Billings, Montana to discuss Plaintiffs' technology and potential business relationships.  Watts Decl. ¶ 8 and Leachman Aff. ¶ 8.  Defendant ASA was represented by, among others, Defendants Shafer and Townsend.  *Id*.  After preliminary introductions, Plaintiff Verified Beef and Defendant ASA entered into a Confidentiality and Non-Disclosure Agreement ("Confidentiality Agreement") on May 10, 2013, signed by Dr. Shafer and Mr. Townsend.  A copy of the Confidentiality Agreement is attached hereto as Exhibit C.  The Confidentiality Agreement stated that "[T]he parties will maintain as confidential the information shared on from the meeting on or about 5/10, 2013 . . . ."  *Id*.  The agreement further provided, "IT IS FURTHER AGREED that the parties will use any confidential information provided solely for the purposes of discussion of potential business relationship and will not disclose or disseminate such confidential information except upon written consent of the parties."  *Id*.  With this agreement executed, Plaintiffs disclosed to Defendants ASA, Shafer and Townsend Plaintiffs' Programs, and business, financial, and technical information.  Watts Decl. ¶ 8 and Leachman Aff. ¶ 8.  Defendants recognized and acknowledged the value of Plaintiffs' confidential and proprietary information.

14. On May 13, 2013, Plaintiffs filed their second patent application—U.S. Provisional Patent Application Serial No. 61/822,736, directed towards their proprietary method and systems for determining the relative market value of a sale group of livestock based on genetic merit estimates and other information associated with the sale group.

15. Plaintiffs have exercised great care in protecting their confidential and proprietary information through non-disclosure agreements. Similar to their meeting with ASA, Plaintiffs' meetings with another cattle breed association, the American Gelbvieh Association ("Gelbvieh"), were also under the auspices of a confidentiality and non-disclosure agreement dated May 20, 2013, and signed by Dr. Jim Gibb—Gelbvieh's Director. Watts Decl. ¶ 9. On or about May 22, 2013, Plaintiffs met at the Gelbvieh's headquarters and presented Plaintiffs' programs as part of efforts to structure a business relationship.

16. On or about June 7, 2013, Plaintiffs and Defendants again met in-person at the offices of Verified Beef in Bozeman, Montana, with the ASA representatives, including Dr. Shafer and Mr. Townsend. Watts Decl. ¶ 10. Confidential and proprietary information, including business and financial information associated with the Plaintiffs' Programs, were provided to the Defendants.

17. Prior to and during each of the meetings, Defendants made repeated representations to the Plaintiffs that Defendants had no intent of pursuing a feeder calf valuation program of their own. Watts Decl. ¶¶ 8 and 10 and Leachman Aff. ¶ 8. Plaintiffs, having spent a considerable amount of time, resources, and capital in developing and refining this proprietary technology, were induced to enter into this Confidentiality Agreement, because they were assured of Defendants' obligations of confidence and interest in developing a long term

relationship. But for the repeated representations by the Defendants, Plaintiffs would not have entered into the Confidentiality Agreement and would not have disclosed their confidential and proprietary information and trade secret information.

18. During these meetings, Plaintiffs informed ASA of the existence of the pending patent applications for Plaintiffs' methods and systems. Watts Decl. ¶¶ 8 and 10 and Leachman Aff. ¶ 8.

19. On July 31, 2013, Plaintiffs filed their third patent application—U.S. Provisional Patent Application Serial No. 61/860,686 on July 31, 2013, directed towards their proprietary method and systems for determining the relative market value of a sale group of livestock based on genetic merit estimates and other information associated with the sale group.

20. On August 27, 2013, Plaintiffs filed their fourth patent application—a U.S. Non-Provisional Patent Application Serial No. 14/011,304, claiming priority to these three provisional applications. This patent application issued as U.S. Patent No. 8,660,888 (the "'888 Patent") on February 25, 2014. A copy of the '888 Patent is attached hereto as Exhibit D.

21. Plaintiff Leachman Cattle owns all rights, title, and interests in the '888 Patent titled "System, Computer-Implemented Method, and Non-Transitory, Computer-Readable Medium to Determine Relative Market Value of a Sale Group of Livestock Based on Genetic Merit and Other Non-Genetic Factors," identifying Mr. Leland Leachman and Mr. Tim J. Watts as inventors.

22. Plaintiff Verified Beef is the exclusive licensee of the '888 Patent. Watts Decl. ¶ 4 and Leachman Aff. ¶ 4.

23. The '888 Patent is valid and enforceable.

24.    The '888 Patent relates to systems and method of determining the relative market value of a sale group of livestock based on genetic merit estimates.  Certain aspects of Plaintiffs' commercial products, including the Reputation Feeder Cattle® and Genetic Merit Scorecard® programs, are covered by the '888 Patent.

25.    During late summer and early fall of 2013, Plaintiffs were surprised to learn through third parties that Defendants were using and disseminating Plaintiffs' confidential and proprietary information.  Watts Decl. ¶ 11 and Leachman Aff. 11.

26.    Subsequently, Watts learned through third parties that Gelbvieh, one of Plaintiffs' potential customers, might be engaged in discussions with Defendants for the use of a tool to determine the relative market value of a sale group of livestock.  Watts Decl. ¶ 11.  Leachman was informed by Jim Gibb of Gelbvieh that Gelbvieh had decided to work with ASA and not enter into a business relationship with Verified Beef for the Programs.  Leachman Aff. ¶ 12.

27.    On or about February 28, 2014, Plaintiffs were informed through a news release that Defendants had moved forward with, and were in the final development stages of a competing product—a Feeder Profit Calculator.  Watts Decl. ¶ 12 and Leachman Aff. ¶ 13.  A copy of the news release as available on the ASA website is attached hereto as Exhibit E.  *See* Ex. E at p. 3.

28.    On or about March 3, 2014, Plaintiffs provided notice to Defendants of the existence of the '888 Patent and the potential infringement of the '888 Patent.  Plaintiffs also conveyed their concerns regarding potential misuse, misappropriation, and breach of the Confidentiality Agreement, and again invited Defendants to engage in a mutually beneficial relationship.  A copy of the notice is attached hereto as Exhibit F.

29.     On or about March 7, 2014, Defendants, without addressing the notice from the Plaintiffs, ASA proceeded with its infringement of the '888 patent, announcing that they had "finished a calculator that will be utilized to determine the relative value of feeder calves." *See* Ex. E at p. 3.

30.     On or about March 14, 2014, Defendants began offering a product in direct competition with Plaintiff's Programs.  Defendants' product, called Feeder Profit Calculator, is used for determining relative value of feeder calves, which is exactly what Plaintiffs disclosed confidentially to Defendants during their meetings.  *See* Ex. E at pp. 2-3.

31.     On or about March 17, 2014, Plaintiffs, through their counsel, reiterated their concerns to Defendants, specifically to the Executive Committee of the Board of Trustees of ASA.

32.     On or about April 2, 2014, Defendants, through their counsel, denied Plaintiffs' allegations in the notice letters from Plaintiffs.

33.     On or about April 3, 2014, Defendant Shafer participated in a teleconference with Mr. Leachman.  Leachman Aff. ¶ 18. Defendant Shafer confirmed that ASA initially had no intention of offering a competing product, but after viewing Plaintiffs' proprietary and confidential information, ASA later changed course to develop its own product, without informing Plaintiffs.  *Id.*  Mr. Leachman reiterated to Defendant Schafer Plaintiffs' substantial efforts in developing and marketing its products, including the development of a national sales force.  Dr. Schafer, who is familiar with selection indices and economic simulation models, was unrepentant in Defendants' use of Plaintiffs' proprietary and patented technology.

## IV.  CAUSES OF ACTION

### COUNT 1 – FRAUDULENT INDUCEMENT

34.    Plaintiffs incorporate and re-allege the foregoing paragraphs, exhibits, and affidavits attached hereto as if set forth fully in this section.

35.    Defendants ASA and Shafer are established and well-regarded members of the cattle industry for many years.  Defendant Shafer as the Executive Vice President of ASA, and having been employed by ASA in various capacities for over ten years, was in the best position to know about any existing ASA technologies.

36.    Defendants had an overview of Plaintiffs' Programs when Plaintiffs made public presentations in late March 2013, and during the first introductory meeting in April 2013. Defendants expressed keen interest in moving forward and receiving confidential information with Plaintiffs.

37.    Prior to the signing the Confidentiality Agreement, Defendants acknowledged that they had performed some work on a program but had shelved the project.  Defendants made repeated representations to Plaintiffs that Defendants had no intent of pursuing a feeder calf valuation program of their own and were interested in developing a long term relationship with Plaintiffs to promote Plaintiffs' Programs. Watts Decl. ¶¶ 8 and 10.  Plaintiffs were ignorant of any falsity regarding the representations made by Defendants.  Plaintiffs had absolutely no reason to suspect Defendants' veracity of the representations or Defendants' duty of good faith and fair dealing when entering a binding contract.

38.    Plaintiffs, having spent a considerable amount of time, resources, and capital in research and development of this proprietary technology, were induced to enter into this

Confidentiality Agreement, because they were assured of Defendants' obligations of confidence and interest in developing a mutually beneficial business relationship. But for the repeated representations by Defendants, Plaintiffs would not have entered into the Confidentiality Agreement and would not have disclosed their confidential and proprietary information and trade secret information. Watts Decl. ¶ 8 and Leachman Aff. ¶ 8.

39.    In misappropriating Plaintiffs confidential and proprietary information and trade secrets, Defendants have demonstrated a specific intent to cause substantial injury or harm to Plaintiffs and have committed acts amounting to fraud, malice, and gross negligence.

40.    Plaintiffs' suffered harm and continues to suffer harm as a direct result of the acts by Defendants and is entitled to recover its actual damages, exemplary damages, attorneys' fees, pre- and post-judgment interest and costs. Defendants' fraudulent inducement to enter a contract is causing, and unless enjoined and restrained by this Court, will continue to cause the Plaintiffs great and irreparable injury that cannot be fully compensated.

## COUNT 2 - BREACH OF CONTRACT

41.    Plaintiffs incorporate and re-allege the foregoing paragraphs, exhibits, and affidavits attached hereto as if set forth fully in this section.

42.    Defendants ASA, Shafer, and Townsend have breached the valid and enforceable Confidentiality Agreement signed by Shafer and Townsend on behalf of ASA on or about May 10, 2013. Pursuant to this agreement, ASA is prohibited from using Plaintiffs' confidential information for any other purposes except to discuss a potential business relationship with the Plaintiffs. Furthermore, ASA is prohibited from disclosing or disseminating Plaintiffs' confidential information. *See* Ex. C.

43.    With the assurances and protections of this Confidentiality Agreement, Plaintiffs provided confidential and proprietary information during two in-person meetings to Defendants ASA, Shafer, and Townsend on May 10, 2013 and June 7, 2013.  These meetings involved extensive disclosures by Messrs. Watts and Leachman regarding Plaintiffs' methods and systems to determine relative market value of a sale group of livestock, including, but not limited to, feeder calves.  Watts Decl. ¶¶ 8 and 10 and Leachman Aff. ¶ 8.

44.    Defendants ASA, Shafer, and Townsend have breached this Confidentiality Agreement by using Plaintiffs' confidential and proprietary information outside of the scope of what was permitted under the Confidentiality Agreement.  Defendants have been using, disclosing, and disseminating Plaintiffs' confidential information to at least Defendants' other partners in the development of the Feeder Profit Calculator.

45.    Plaintiffs' confidential and proprietary information, have been and are being used by Defendants for their own use and/or use by the public in general without due compensation to Plaintiffs and in direct violation of the Confidentiality Agreement.

46.    Defendants' misuse and misappropriation of Plaintiffs' confidential information, and breach of the Confidentiality Agreement have resulted in significant harm to Plaintiffs, including loss of revenue from their products, loss of market share, market displacement, and loss of goodwill and customer relations.  Watts Decl. ¶ 16 and Leachman Aff. ¶ 19.  Plaintiffs also have incurred significant attorney fees that are foreseeable damages arising from Defendants' wrongful conduct and breach of the Confidentiality Agreement.  *Id.*  Plaintiffs suffered harm and continue to suffer harm as a direct and proximate result of Defendants' acts,

and are entitled to receive their actual damages, exemplary damages, attorneys' fees, pre- and post- judgment interest and costs.

47.     Defendants also recognized and expressly agreed in the Confidentiality Agreement that any breach of the Confidentiality Agreement will cause irreparable harm, and that Plaintiffs shall be entitled to specific performance in form of equitable relief in order to enforce the Confidentiality Agreement.  *See* Ex. B.  All conditions precedent to Plaintiffs' right to seek and obtain recovery from Defendants have been satisfied, occurred, or waived.

48.     Defendants' conduct has caused and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated.

### COUNT 3 – TRADE SECRET MISAPPROPRIATION

49.     Plaintiffs incorporate and re-allege the foregoing paragraphs, exhibits, and affidavits attached hereto as if set forth fully in this section.

50.     Defendants ASA, Shafer, and Townsend have misappropriated Plaintiffs' trade secrets.  Pursuant to the Confidentiality Agreement, Plaintiffs provided trade secrets in the form of confidential business, financial, and technical information to Defendants, including, but not limited to, processes and formulae for determining the relative market value of a sale group of cattle.

51.     Plaintiffs have undertaken and continue to undertake reasonable efforts to keep their trade secrets and confidential information from becoming unavailable to unauthorized persons, including limiting access to such information on a "need to know" basis, and providing such information to outside parties only under confidentiality and non-disclosure agreements. Watts Decl. ¶¶ 8 and 9.

52.    Defendants Shafer and Townsend are signatories of the Confidentiality Agreement and knew that they had a duty to keep secret the confidential information and trade secrets provided by Plaintiffs.  Ex. C.  They each repeatedly assured Plaintiffs that they would not develop a competing product based on the disclosures from Plaintiffs.

53.    Yet, on or about March 14, 2014, Defendants stated on their website that they have developed the Feeder Profit Calculator, a tool to determine relative value of feeder calves. Ex. E at pp. 2-3.

54.    Defendants have misappropriated Plaintiffs' trade secrets and breached their duty to maintain secret Plaintiffs' trade secrets and confidential information by disclosing or using Plaintiffs' information without express or implied consent to develop a competing product.

55.    Plaintiffs have repeatedly provided notice regarding potential misuse and misappropriation of information provided under the Confidentiality Agreement, yet Defendants have shown, and continue to show, willful and wanton disregard of Plaintiffs' rights.

56.    Plaintiffs' suffered harm and continue to suffer harm as a direct result of the acts by Defendants and is entitled to recover its actual damages, exemplary damages, attorneys' fees, pre- and post-judgment interest and costs.  Defendant's misuse and misappropriation of trade secrets is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated.

## COUNT 4 - INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

57.    Plaintiffs incorporate and re-allege the foregoing paragraphs, exhibits, and affidavits attached hereto as if set forth fully in this section.

58.     Defendants have intentionally interfered with Plaintiffs' prospective business relations.   Plaintiffs' Programs, including the Genetic Merit Scorecard® program, and Defendants' Feeder Profit Calculator are the only products on the market that compute the relative market value of a sale group of livestock.   Defendants' Feeder Profit Calculator was brought to the market following Defendants' misuse, misappropriation, and breach of the Confidentiality Agreement.   Defendants have unfairly capitalized on the investment of time, money, and resources of Plaintiffs.

59.     Prior to meeting with Plaintiffs in May and June 2013, Defendants did not have a product that determined the relative market value of a sale group of livestock.   Plaintiffs disclosed in confidence how such system and methods work.   Despite Defendants' learning this information in confidence and instead of working with Plaintiffs, Defendants are promoting a competing product to the same target audience and soliciting the same customer base as Plaintiffs.

60.     By offering a competing product and service at no cost, Defendants are preventing prospective breed associations, ranchers, feed yards, and buyers of cattle from entering into relationships with Plaintiffs.   By offering competing infringing products and services at no cost, Defendants are placing unfair economic pressures on Plaintiffs, and preventing Plaintiffs from acquiring prospective customers.

61.     As described above, Plaintiffs and Gelbvieh, another breed association, had previously entered into a confidentiality agreement and had meetings to structure a business relationship. Watts Decl. ¶ 9. Defendants approached Gelbvieh and offered to its members the use of the infringing product and service.   Gelbvieh has informed Plaintiffs that Gelbvieh has

decided to use Defendants' infringing product and service. Leachman Aff. ¶ 12. This is also supported by the recent two-page promotional article of Defendants' competing product in the April 2014 Gelbvieh World publication. A copy of the relevant pages from this publication is attached hereto as Exhibit G.

62. Plaintiffs' suffered harm and continue to suffer harm as a direct result of the acts by Defendants and is entitled to recover its actual damages, exemplary damages, attorneys' fees, pre- and post-judgment interest and costs. Defendants' intentional interference with prospective business relations is causing, and unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated.

<u>**COUNT 5 – LANHAM ACT VIOLATIONS**</u>

63. Plaintiffs incorporate and re-allege the foregoing paragraphs, exhibits, and affidavits attached hereto as if set forth fully in this section.

64. Defendants are in commercial competition with Plaintiffs.

65. Defendants have violated 15 U.S.C.§ 1125(a), §43(a) of the Lanham Act, by offering and promoting the Feeder Profit Calculator through false and/or misleading statements, representations, and advertising that has caused and will continue to cause Plaintiffs injury to their commercial reputation, loss of sales, and unfair competition.

66. Defendants have made false or misleading statements in advertisements regarding the Feeder Profit Calculator, including details regarding its development. Ex. E at pp. 2-3. The deception created and caused by Defendants' false and misleading statements of fact has influenced and is likely to continue to influence persons, including, without limitations, other

breed associations, including Gelbvieh, and ranchers, feed yards, and other buyers and sellers in the cattle industry, and their purchasing or use decisions.

67.     Defendants' offering of its Feeder Profit Calculator product in direct competition with Plaintiffs' Programs is the proximate cause of Plaintiffs' injury to their commercial reputation and loss of sales, and unfair competition.

68.     Plaintiffs have suffered harm and continue to suffer harm as a direct result of the acts by Defendants and are entitled to recover its actual damages, exemplary damages, attorneys' fees, pre- and post-judgment interest and costs.  Defendants' false advertising is causing, and unless enjoined and restrained by this court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated.

### COUNT 6 - INFRINGEMENT OF THE '888 PATENT

69.     Plaintiffs incorporate and re-allege the foregoing paragraphs, exhibits, and affidavits attached hereto as if set forth fully in this section.

70.     Defendants by developing, using, and offering to others the Feeder Profit Calculator have directly, indirectly, contributorily, and/or by inducement, infringed and continue to infringe claims of the '888 Patent under 35 U.S.C. § 271 literally and/or under the doctrine of equivalents.

71.     Defendants direct and indirect infringement of the '888 Patent has been and continues to be without the express or implied consent and license from Plaintiffs.

72.     Despite Defendants' knowledge of the patent-in-suit through multiple notices from Plaintiffs, they willfully, deliberately, and intentionally infringed and continue to infringe

claims of the '888 Patent, and as such, Plaintiffs are entitled to treble damages pursuant to 35 U.S.C. § 284.

73.    Plaintiffs have suffered harm and continue to suffer harm as a direct result of the acts by Defendants and are entitled to recover its actual damages, exemplary damages, attorneys' fees, pre- and post-judgment interest and costs.  Defendants' infringement has caused and continues to cause irreparable injury to Plaintiffs, and will continue to do so, and as such Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## V.  JURY DEMAND

74.    Plaintiffs hereby demand a trial by jury of any and all issues triable of right by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VI.  PRAYER FOR RELIEF

75.    Wherefore, premises considered, Plaintiffs respectfully request that the Court grant a Preliminary Injunction, and, upon final trial hereof, a Permanent Injunction as delineated herein, enjoining Defendants as follows:

(a)    Defendants shall immediately cease using and disclosing to any person or entity any part of Plaintiffs' confidential and proprietary information and trade secrets,

(b)    Defendants shall immediately cease offering products, including Defendants' Feeder Profit Calculator, for determining relative market value of a sale group of livestock, including, but not limited to, feeder calves, to any other breed association, including Gelbvieh, and any ranchers, feed yards, and other buyers and sellers in the cattle industry,

(c)    Defendants shall immediately withdraw any existing and cease promoting Defendants' Feeder Profit Calculator through advertisements and articles in electronic and printed publications, including websites and catalogs,

(d)    Defendants shall immediately cease providing any and all access to any person or entity to Defendants' Feeder Profit Calculator,

(e)    Defendants shall immediately cease performing any method, promoting, or soliciting the use of any product or system infringing the '888 Patent, including the Feeder Profit Calculator, for determining relative market value of a sale group of livestock, including, but not limited to, feeder calves;

(f)    Defendants shall immediately cease from interfering with Plaintiffs' business relations with respect to Plaintiffs' Programs;

(g)    Defendants shall not delete, destroy, hide, secret, or otherwise remove from the jurisdiction of this court any document, record, disc, drawing, photograph, or any other written or electronic media which contains or describes or discusses any of Plaintiffs' confidential and proprietary information, from January 1, 2013 to present; and

(h)    Defendants shall not delete, destroy, hide, secret, or otherwise remove from the jurisdiction of this court any document, record, disc, drawing, photograph, or any other written or electronic media which contains or describes or discusses any of aspect of the Feeder Profit Calculator, or any Defendants' products that determine relative market value of a sale group of livestock.

76.     In addition to the injunctive relief requested herein, Plaintiffs also request a judgment from this Court including the following:

(a)     Defendants have fraudulently induced Plaintiffs to enter into a contract;

(b)     Defendants have breached the Confidentiality Agreement with Plaintiffs;

(c)     Defendants have misused and misappropriated Plaintiffs' trade secrets;

(d)     Defendants have tortiously interfered with business relations of the Plaintiffs;

(e)     Defendants be ordered to account and pay to Plaintiffs the damages to which Plaintiffs are entitled because of Defendants' fraudulent inducement to enter into a contract, breach of the Confidentiality Agreement, misuse and misappropriation of trade secrets and confidential information, and tortious interference with business relations, including reasonable attorney fees and costs of court incurred by the Plaintiffs, as well as any and all special and punitive damages in amounts and for a multiple determined to be sufficient under the applicable guiding legal principles as sufficient to deter Defendants from such conduct in the future

(f)     Defendants have violated 15 U.S.C.§ 1125(a), §43(a) of the Lanham Act;

(g)     Defendants be ordered to account and pay to Plaintiffs the actual and compensatory damages, plus treble damages, costs and attorneys' fees pursuant to at least 15 U.S.C.§ 1117(a) and (b);

(h)     Defendants have infringed, contributed to the infringement, or induced the infringement of the claims of the '888 Patent either literally or under the doctrine of equivalents;

(i)  Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with them, be preliminarily enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '888 Patent until a full trial on the merits has been held;

(j)  Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with them, directly or indirectly, be permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '888 Patent, upon final trial;

(k)  Defendants be ordered to account and pay to Plaintiffs the damages to which Plaintiffs are entitled as a consequence of the infringement of the '888 Patent including lost profits and/or no less than a reasonable royalty;

(l)  Damages be trebled for the willful, deliberate, and intentional infringement by Defendants as alleged herein in accordance with 35 U.S.C. § 284;

(m)  Declare this case an exceptional case and Plaintiffs be awarded prejudgment interest, costs, disbursements, and attorneys' fees herein in accordance with 35 U.S.C. § 285; and

(n)  Plaintiffs be granted the relief set forth for each cause of action in this complaint, and such other and further relief, either at law or in equity, as this Court may deem just and equitable.

Respectfully submitted this 11th day of April, 2014.

/s/ Timothy G. Atkinson_____
Timothy G. Atkinson, Esq.
Mark E. Lacis, Esq.
IRELAND STAPLETON PRYOR & PASCOE, PC
717 17th Street, Suite 2800
Denver, CO 80202
(303) 623-2700
(303) 623-2062 (fax)
tatkinson@irelandstapleton.com
mlacis@irelandstapleton.com

LEACHMAN CATTLE OF COLORADO, LLC AND VERIFIED BEEF, LLC
ATTORNEYS FOR PLAINTIFFS

Leachman Cattle of Colorado, LLC
5100 ECR 70
Wellington, Colorado 80549

Verified Beef, LLC
209 S. 19th Ave., Suite 3,
Bozeman, Montana 59718

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, and served one (2) hard copy via U.S. Mail and personal service to the following:

American Simmental Association
1 Simmental Way
Bozeman, Montana 59715-9733

Dr. Wade R. Shafer
3944 Baxter Lane, Unit 6
Bozeman, Montana 59718-8072

Will Townsend
503 W. Olive Street
Bozeman, MT 59715-4549

/s/ Timothy G. Atkinson_____
Timothy G. Atkinson, Esq.
Mark E. Lacis, Esq.
IRELAND STAPLETON PRYOR & PASCOE, PC
717 17th Street, Suite 2800
Denver, CO 80202
(303) 623-2700
(303) 623-2062 (fax)
tatkinson@irelandstapleton.com
mlacis@irelandstapleton.com

LEACHMAN CATTLE OF COLORADO, LLC AND VERIFIED BEEF, LLC
ATTORNEYS FOR PLAINTIFFS