IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01040-RBJ

LEACHMAN CATTLE OF COLORADO, LLC, a Colorado Limited Liability Corporation and
VERIFIED BEEF, LLC, A Montana Limited Liability Corporation,

      Plaintiffs,

v.

AMERICAN SIMMENTAL ASSOCIATION, a Montana Association,

      Defendant.

---

## ORDER

---

    This matter is before the Court on Defendant's Motion to Dismiss First Amended

Complaint for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue [ECF No.

30].  The plaintiffs assert that the Court has subject matter jurisdiction over the federal claims

pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to

28 U.S.C. § 1367.[1]  The plaintiffs do not contend that the Court has diversity jurisdiction over

the state law causes of action.

    The Court held a hearing on the motion on August 11, 2014.  The parties were notified

ahead of time that the hearing would be their opportunity to present evidence on the

jurisdictional questions.  None of the parties submitted additional evidence.  Upon review of the

record and the arguments of counsel, the Court concludes that it has no personal jurisdiction over

the defendant for the alleged patent infringement or Lanham Act violations, even though it has

---

[1] While the plaintiffs assert supplemental jurisdiction over the state law claims, the Court makes no ruling
as to whether it could have exercised pendent jurisdiction over the claims.

subject matter jurisdiction over both claims.  Further, while the Court may have had personal jurisdiction over the defendant for the alleged torts that took place within Colorado, there is no independent subject matter jurisdiction over these state law claims.  As such, all claims must be dismissed.

## BACKGROUND

This case appears to present a more difficult question than it actually does.  Because the parties agree that the Court can only assert original jurisdiction over the federal law causes of action, the Court must first consider only the facts giving rise to the federal claims.  If those facts would support personal jurisdiction over the defendant, the Court can maintain this action.  If they would not, the Court must dismiss the federal law claims, and, in turn, dismiss the state law claims that only could have been heard pursuant to supplemental jurisdiction.

Before we delve into the facts, it is worth distinguishing between the state law claims and the federal law causes of action.  The plaintiffs bring the following state law claims against the defendant: (1) trade secret misappropriation; (2) intentional interference with prospective business relations; and (3) misappropriation of business value.[2]  These claims are based on conduct that allegedly occurred in the summer and fall of 2013.  The plaintiffs assert the following federal law claims: (1) infringement of the '888 Patent; (2) infringement of the '557 Patent; and (3) Lanham Act violations.  These claims are based on conduct that allegedly occurred in 2014.  The two distinct time periods are worth keeping in mind as we discuss the background of this case.

Since we are at the pleading stage, the Court considers true the plaintiffs' factual assertions that are plausible on their face.  However, because this is a motion to dismiss for lack

---

[2] The Court notes that it is unaware of a state law cause of action for misappropriation of business value.  However, the validity of the claim is not under review at this time, nor is its resolution pertinent to the outcome of this motion.

of personal jurisdiction, "[t]he allegations in the complaint must be taken as true [only] to the extent they are uncontroverted by the defendant's affidavits." *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990) (citation and quotation marks omitted).

Plaintiff Leachman Cattle of Colorado, LLC ("Leachman Cattle") is a Colorado limited liability company with its principal place of business in Wellington, Colorado.  Plaintiff Verified Beef, LLC ("Verified Beef") is a Montana limited liability company with its principal place of business in Bozeman, Montana.  Defendant American Simmental Association ("ASA") is a Montana nonprofit corporation with its principal place of business in Bozeman, Montana.

According to the plaintiffs, Leachman Cattle developed an innovative method for determining the relative economic value of a group of existing commercial calves and reporting that value to the owners and potential buyers of that group.  First Amended Complaint [ECF No. 28] at ¶ 8.  The plaintiffs have developed commercial products embodying this calculation method, including the Reputation Feeder Cattle® and the Genetic Merit Scorecard® programs (collectively the "Programs").  *Id.*  It is unclear when this method was developed.  However, on or around March 19, 2013 the plaintiffs distributed introductory press releases and marketing materials concerning their Programs.  *Id.* at ¶ 9.  These materials invited ranchers, feed yards, and buyers in the cattle industry to contact the plaintiffs for further information.  *Id.*

Facts Giving Rise to State Law Claims: Summer & Fall 2013

On or about April 12, 2013 the plaintiffs met with representatives from ASA to discuss the Programs.[3]  *Id.* at ¶ 10.  Only publicly available information was shared with ASA at this meeting.  About a month later, on May 10, 2013, representatives of the parties met at the offices of Verified Beef in Montana to discuss the potential of entering into a business relationship.  *Id.* at ¶ 12.  During the meeting, Verified Beef (and not Leachman Cattle) and ASA entered into a

---

[3] The plaintiffs have made no allegation concerning where this meeting took place.

confidentiality and non-disclosure agreement ("Confidentiality Agreement").  The Confidentiality Agreement assured that the parties would keep confidential any information shared at that meeting, and that they would only use said information "for the purposes of discussion of potential business relationship and will not disclose or disseminate such confidential information except upon written consent of The Parties."  [ECF No. 28-1].  Once the Confidentiality Agreement was executed, the plaintiffs disclosed the Programs to ASA along with their business, financial, and technical information.  First Amended Complaint [ECF No. 28] at ¶ 12.

Around the same time, the plaintiffs met with another cattle breed association, the American Gelbvieh Association ("AGA"), to discuss the Programs and the possibility of entering into a business relationship.  *Id.* at ¶ 14.  AGA entered into a confidentiality and non-disclosure agreement with the plaintiffs on May 20, 2013, and met with the plaintiffs at AGA's headquarters in Colorado on May 22, 2013.  *Id.*  The Complaint does not allege that the parties entered into a business relationship at this time but instead states that the plaintiffs presented the Programs "as part of efforts to structure a business relationship with [AGA]."  *Id.*

On or about June 7, 2013, the plaintiffs once again met with ASA representatives at the offices of Verified Beef in Montana.  According to the plaintiffs, the purpose of the meeting was to "formalize a business relationship whereby ASA would promote Plaintiffs' Programs."  *Id.* at ¶ 15.  Confidential and proprietary information was once again shared at this meeting pursuant to the terms of the Confidentiality Agreement.  *Id.*  The plaintiffs allege that prior to and during each of its meetings with ASA, the defendant's agents represented that ASA had no interest in pursuing a feeder calf valuation program of its own.  *Id.* at ¶ 16.[4]  The plaintiffs also contend that

---

[4] The defendant firmly disputes this allegation.  In his declaration, ASA Executive Vice President Dr. Wade Shafer stated that when ASA and Verified Beef first met in March of 2013, Dr. Shafer informed

during these meetings they informed ASA of the existence of pending patent applications concerning the plaintiffs' methods and systems. At this time only two patent applications were pending, the first one filed on April 13, 2013 and the second a month later on May 13, 2013. *See id.* at ¶¶ 11, 13, 17. Notably, it appears that no patent was granted as to either of these applications, nor in any event are the requested patents that were the subjects of the applications at issue in this lawsuit.

No further discussions seem to have taken place among the parties between June 7, 2013 and March 3, 2014. However, according to the plaintiffs, during late summer and early fall of 2013 they were "surprised to learn through third parties that Defendant was using and disseminating Plaintiffs' confidential and proprietary information." *Id.* at ¶ 24. The plaintiffs allege that they "learned through third parties that Defendant might be engaged in discussions with [AGA], one of Plaintiffs' potential customers . . . for the use of a tool to determine the relative market value of a sale group of livestock." *Id.* at ¶ 25. At some point in time (not disclosed in the filings), Jim Gibb of AGA told the plaintiffs that he had "decided to work with Defendant and not enter into a business relationship with Verified Beef for the Programs." *Id.*; *see also* Declaration of Leland Leachman, Owner and Manager of Leachman Cattle [ECF No 32-1] at ¶ 13. The plaintiffs allege that "[u]pon information and belief, representatives of Defendant disclosed Plaintiffs' confidential and proprietary trade secret information to [AGA] in Westminster, Colorado to convince [AGA] to enter into a business relationship with Defendant

---

Verified Beef's representatives that "ASA was developing a feeder profit calculator using the ASA's Terminal Index data . . . ." [ECF No. 21 at ¶ 14]. Verified Beef's representatives explained that they were working on a similar calculator, and both parties "generally discussed the possibility of a mutual collaboration on the project." *Id.*; *see also* Declaration of William Townsend, ASA's Director of Industry and Commercial Operations [ECF No. 22] at ¶ 5. Which party is painting the more accurate picture is irrelevant for purposes of determining personal jurisdiction in this case.

related to the technology rather than with Verified Beef."[5]  First Amended Complaint [ECF No. 28] at ¶ 25.

The defendant offers contradicting evidence, in particular through the Declaration of William Townsend, ASA's Director of Industry and Commercial Operations.  According to Mr. Townsend, he received a call from Frank Padilla of AGA on April 12, 2013 asking "whether the ASA was continuing to work on the development of a calculator that would be made available to other participants in the beef industry."  [ECF No. 22 at ¶ 6].  Despite the conflicting declarations, the plaintiffs chose not to elicit testimony from an AGA representative during the hearing.

As was discussed during the August 11, 2014 hearing in this court, the plaintiffs effectively hang their jurisdictional argument on the connection between ASA and AGA, and more particularly the pursuit of AGA by ASA.  However, the facts connecting ASA to AGA— and in particular ASA's alleged pursuit of AGA—only form the basis for the plaintiffs' state law causes of action, specifically the claims that ASA misappropriated trade secrets, intentionally interfered with prospective business relations, and misappropriated business value.

Facts Giving Rise to Federal Law Claims: Winter & Spring 2014

To reiterate, no communications appear to have taken place between the parties after June 2013 until March 2014.  During this period of silence, the plaintiffs began filing the patent applications for the patents that are at issue in this suit.  On August 27, 2013 the plaintiffs filed their fourth patent application, which was granted.  U.S. Patent No. 8,660,888 (the "'888 Patent") was issued on February 25, 2014.  First Amended Complaint [ECF No. 28] at ¶ 19.  On January 10, 2014 the plaintiffs filed their fifth patent application, resulting in U.S. Patent No.

---

[5]The plaintiffs noticeably fail to distinguish what confidential information was disclosed by ASA to AGA unique to that disclosed by the plaintiffs to AGA in May of 2013.

8,725,557 (the "'557 Patent") which was issued on May 13, 2014.  *Id.* at ¶ 26.  Leachman Cattle

owns all rights, title, and interests in these patents, and Verified Beef is the exclusive licensee of

each.  *Id.* at ¶¶ 20–21, 27–28.  These are the only two patents that the plaintiffs allege have been

infringed by the defendant.

On February 28, 2014, ASA announced via its website that it had "moved forward with,

and [was] in the final development stages of a competing product—a Feeder Profit Calculator."

*See id.* at ¶ 31.  On March 3, 2014 the plaintiffs notified ASA of the issuance of the '888 Patent

and ASA's potential infringement of it.  *Id.* at ¶ 32.  ASA did not respond to this notice, and on

March 7, 2014 it announced, again via its website, that it had "finished a calculator that will be

utilized to determine the relative value of feeder calves."  *Id.* at ¶ 33.

On March 14, 2014 ASA allegedly "began offering a product in direct competition with

Plaintiffs' Programs."  *Id.* at ¶ 34.  The plaintiffs reiterated their concerns to ASA on March 17,

2014.  *Id.* at ¶ 35.  ASA responded on April 2, 2014, denying the plaintiffs' allegations, including

those of infringement and of breach of the Confidentiality Agreement.  *See id.* at ¶ 36.  The next

day Dr. Shafer spoke to Mr. Leachman on the phone and, according to the plaintiffs, confirmed

that while ASA initially had no intention of offering a competing product, it changed course to

develop its own product after viewing the plaintiffs' proprietary and confidential information.

*Id.* at ¶ 37; *see also* Declaration of Mr. Leachman [ECF No. 32-1] at ¶ 19.  According to Dr.

Shafer, during the call he "offered to remove any announcements related to the calculator from

the ASA's website and [to] continue to keep the ASA's calculator non-public until the dispute

over infringement was resolved."  Declaration of Dr. Shafer [ECF No. 21] at ¶ 18.  The plaintiffs

contend, however, that as of June 24, 2014 "ASA appeared to still be engaged in marketing the

Feeder Profit Calculator as evidenced by Exhibit A7."[6]  Declaration of Mr. Leachman [ECF No. 32-1] at ¶ 17.  The plaintiffs ultimately contend that "[a]t a minimum, Defendant's making, using, and offering for sale its Feeder Profit Calculator infringes the Patents-in-Suit."  First Amended Complaint [ECF No. 28] at ¶ 41.  The plaintiffs also allege that ASA violated the Lanham Act "by offering and promoting the Feeder Profit Calculator through false and/or misleading statements, representations, and advertising . . . ."  *Id.* at ¶ 64.

Reviewing this timeline, the only actions giving rise to federal question jurisdiction are actions that took place after February 25, 2014, when the first patent was issued, and after February 28, 2014, when the first allegedly false advertisement was made in promotion of the Feeder Calculator.  And yet few if any factual allegations have been made that would support a finding that ASA's actions took place in or were purposefully aimed at the state of Colorado.  As will be discussed more fully below, the Court cannot therefore assert personal jurisdiction over ASA in connection to these federal claims.

## ANALYSIS

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).  Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process.  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187,

---

[6] The Court has reviewed Exhibit A7, a publication put out by ASA subtitled "2013 Annual Report." [ECF No. 32-8].  The publication is conspicuously lacking a date.  Still, as the Court will further discuss below, even if this publication could be said to market the allegedly infringing product in June of 2014, such advertising is not sufficient to assert jurisdiction over ASA.

1193 (Colo. 2005).  Therefore, the Court need only determine whether exercise of jurisdiction over the defendant comports with due process.

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984).  In order to exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 US. 310, 323 (1945).  In all, the defendant's contacts with the forum must be such that it is foreseeable that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may be established in two ways.  General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Specific jurisdiction exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (citation omitted).  In such cases, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (citations omitted).

The burden of proof is on the plaintiff to establish minimum contacts. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Where a challenge to

personal jurisdiction is raised early in the litigation, the plaintiff may meet its burden with a prima facie showing based on the pleadings. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The Court accepts as true all well pleaded, non-conclusory facts alleged in the plaintiff's complaint, and all factual disputes are resolved in the plaintiff's favor. *Id.*

 1. <u>General Personal Jurisdiction</u>

 The Supreme Court recently addressed the issue of general personal jurisdiction over corporate defendants in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). The Court rejected the argument that general jurisdiction exists "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" as "unacceptably grasping." 134 S. Ct. at 761. Rather, the Court held that the proper inquiry is not whether a foreign corporation's "in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear*, 131 S. Ct. at 2851). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 760 (citation, internal quotation marks, and alterations omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.*

 ASA contends that it is not "essentially at home" in Colorado, and therefore that this Court cannot assert general jurisdiction over it. Dr. Shafer has declared that ASA has minimal contacts with Colorado. *See* [ECF No. 21 at ¶¶ 6–9]; [ECF No. 30-1 at ¶¶ 2–6, 12–14]. At most, ASA has held a majority of its annual membership meetings in Denver, Colorado since 1990, though it has also held these meetings in Washington, D.C.; Houston, TX; Fort Worth, TX; Jackson, MS; and Louisville, KY. *See* [ECF No. 30-1 at ¶ 13]. Furthermore, ASA has fewer

than 60 members in Colorado out of its 3,870 members nationwide.  *See* [ECF No. 21 at ¶ 3].

The plaintiffs contend that these contacts are sufficient to create general personal jurisdiction—

stating that "ASA treats Denver like home, the place where it annually gathers its members to

conduct the important business of the day"—while adding that ASA has also "made itself at

home in Colorado" through its *specific* conduct in *this* case.  [ECF No. 32 at 4–5].  The latter

argument is more apt for asserting specific jurisdiction over the defendant.  The plaintiffs'

argument in support of general jurisdiction effectively comes down to ASA's annual member

meetings.  Finding that ASA is subject to general jurisdiction would make it such that *any*

plaintiff could adjudicate *any* claims against ASA within the courts of Colorado.  This Court is

far from persuaded that ASA is "essentially at home" in Colorado simply because in some years

it holds its annual meeting here.  The Court finds that ASA is not subject to general jurisdiction

in Colorado, an opinion with which plaintiffs' counsel notably did not disagree during the

August 11, 2014 hearing.

     2. <u>Specific Personal Jurisdiction</u>

     "The inquiry whether a forum State may assert specific jurisdiction over a nonresident

defendant focuses on the relationship among the defendant, the forum, and the litigation."

*Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks and citations omitted).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related

conduct must create a substantial connection with the forum State."  *Id.*  Importantly, the Court

must look to "the defendant's contacts with the forum State itself, not the defendant's contacts

with persons who reside there."  *Id.* at 1122.  "To be sure, a defendant's contacts with the forum

State may be intertwined with his transactions or interactions with the plaintiff or other parties.

But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient

basis for jurisdiction." *Id.* at 1123. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475).

"So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King*, 471 U.S. at 462, n.18 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). However, "'some single or occasional acts' related to the forum may not be sufficient to establish jurisdiction if 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum." *Id.* (citations omitted). Overall, "[s]pecific jurisdiction may be exercised where the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996) (citation omitted).

As discussed above, the Court has original subject matter jurisdiction only over the federal law causes of action. Therefore, the Court must analyze each federal claim separately in order to determine whether sufficient facts have been alleged establishing that the underlying action is based upon or arises out of activities that ASA purposefully directed toward Colorado such that the Court also has personal jurisdiction over the claim. If such facts have been sufficiently established, ASA will be subject to suit in this Court. If not, the federal causes of action—and in turn the supplemental state claims—must be dismissed.

*i. Patent Infringement*

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271.  "It is axiomatic that there can be no infringement of a patent prior to its issuance."  *Cohen v. United States*, 487 F.2d 525, 527 (Ct. Cl. 1973) (citing *Gayler v. Wilder*, 51 U.S. 477, 492 (1850) and *Coakwell v. United States*, 372 F.2d 508 (Ct. Cl. 1967)); *see also Clark v. Crues*, 260 F. App'x 292, 294 (Fed. Cir. 2008).  "The situs of the patent infringement occurs where the offending act is committed."  *Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F. Supp. 541, 545 (D. Colo. 1995) (citing *N. Am. Philips Corp. v. Am. Vending Sales*, 35 F.3d 1576 (Fed. Cir. 1994)).[7]

The plaintiffs contend that ASA is subject to specific jurisdiction in Colorado because it purposefully directed its activities towards Colorado residents and because these activities caused the plaintiffs to suffer injuries.  [ECF No. 32 at 5–9].  In particular, the plaintiffs make three assertions concerning their patent infringement claims: (1) ASA infringed the '888 Patent by working with AGA to jointly offer for sale, sell, and use the Feeder Profit Calculator; (2) ASA infringed the '557 patent in the same respects; and (3) ASA approached AGA in Colorado and offered an infringing product and service.  *Id.* at 6.  Unfortunately, the timeline does not add up.

As noted above, there can be no infringement of a patent before it is issued.  The '888 patent was not issued until February 25, 2014, and the '557 Patent was issued even later, on May 13, 2014.  Yet the plaintiffs have only alleged that ASA was engaged in discussions with AGA

---

[7] With respect to such issues as patent infringement, it is appropriate to look to the law of the Federal Circuit "because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).

in late summer and early fall of 2013.[8]  Plaintiffs' filings are completely devoid of allegations
that ASA communicated with AGA after this time.  Simply put, no claim has been made that
ASA contacted AGA in order to offer or sell (or make or use) the Feeder Profit Calculator in
Colorado at any time after February 25, 2014.

The Court raised this concern with plaintiffs' counsel during the hearing.  The only
evidence counsel presented in support of his clients' contention that an infringing act occurred
after this date was an April 2014 publication issued by AGA wherein the organization discusses
the Feeder Profit Calculator.  *See* [ECF No. 32-9].  Even assuming this conduct could rise to the
level of infringement, the act occurred at the hands of AGA, not ASA.  The Court is not
persuaded by counsel's argument that the August 2013 AGA Board minutes coupled with this
announcement demonstrated a joint effort on the part of AGA and ASA.  Yet even if it did, a
defendant must purposefully avail itself of the forum *state*, not the forum state's residents.  The
plaintiffs only direct the Court's attention to announcements made by ASA on its own website
and in its publications.  The plaintiffs have not shown (nor have they even suggested) that any of
these announcements were purposefully directed at Colorado.  The Court thus finds that ASA is
not subject to specific jurisdiction on the patent infringement claims as there has been no
showing that ASA committed any act of infringement in or purposefully directed towards
Colorado.

### ii. Lanham Act Violations

The plaintiffs also contend that ASA targeted AGA and other potential customers in
Colorado with advertisements for the Feeder Profit Calculator that contained false and/or

---

[8] For example, in their Response brief the plaintiffs point to minutes from AGA's Board meeting that took
place from August 16–17, 2013 indicating that AGA had directed its staff "to pursue a collaborative effort
with the [ASA] in the development of a commercial producer feeder calf economic index . . . ."  *See* [ECF
No. 32-4 at ¶ 8].  In this case, not only is the timeline unhelpful to plaintiffs' cause, but the minutes could
also suggest that AGA pursued ASA, and not the other way around.

misleading statements, representations, and advertising in violation of the Lanham Act.  First

Amended Complaint [ECF No. 28] at ¶ 64.  The plaintiffs claim that these allegedly misleading

and false representations have "influenced and [are] likely to continue to influence persons,

including, without limitations, other breed associations, including [AGA], and ranchers, feed

yards, and other buyers and sellers in the cattle industry, and their purchasing or use decisions."

*Id.*  Finally, they argue that "[b]ecause [AGA] as well as some of the ranchers, feed yards and

other buyers and sellers in the cattle industry targeted by Defendant are located in Colorado,

Defendant's Lanham Act violations have occurred in Colorado."  *Id.*

This contention is also lacking.  First, the plaintiffs essentially abandon their earlier

position that AGA and ASA jointly collaborated to develop the feeder calculator and now allege

that ASA targeted AGA through its advertisements once the calculator was already developed.

Most, if not all of the other causes of action rely on the earlier contention that ASA contacted

AGA prior to developing the product and therefore prior to advertising it.  As to the second

position, the Court reiterates the aforementioned rule: specific jurisdiction may be exercised only

where the defendant has "purposefully directed" its activities toward the forum state.  The

plaintiffs have put forth no argument (or plausible allegation) that ASA has purposefully directed

its advertising to residents of Colorado.  Instead, they effectively argue that because ASA is

targeting the entire cattle industry, and because some members of that industry reside in

Colorado, ASA should be subject to suit in Colorado.  The logical conclusion to this argument is

that ASA could be sued in any state in which cattle ranchers, feed yards, and other buyers and

sellers in the cattle industry reside.  Overall, the allegations that ASA advertised the Feeder

Profit Calculator on its own website and in its own publications far from establish a substantial

connection to Colorado.

3. <u>Pendent Personal Jurisdiction</u>

One question the Court grappled with a bit in ruling on this motion is whether the Court could (or should) keep the action given that the state law claims likely give rise to specific jurisdiction over the defendant. Could they in turn provide "pendent personal jurisdiction" with respect to the federal claims? The problem is that the Court has only been asked to assert supplemental jurisdiction over the state law claims, not original jurisdiction. Thus, the Court would be using claims over which it has no original jurisdiction to establish personal jurisdiction with respect to claims as to which the Court has original jurisdiction but no personal jurisdiction.

A Tenth Circuit decision, *United States v. Botefuhr*, 309 F.3d 1263 (10th Cir. 2002), while not directly on point, is quite helpful in thinking about this issue. There, the Tenth Circuit was presented with the question of whether a district court abused its discretion in maintaining a cause of action over which it had only asserted pendent personal jurisdiction after the claim over it which it asserted specific personal jurisdiction had been voluntarily dismissed by the parties. "Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Botefuhr*, *Id.* at 1272 (citations omitted). This first claim is considered the "anchor claim." *See id.* at 1274. "In essence, once a district court has personal jurisdiction over a defendant for [the anchor] claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *Id.* at 1272.

16

The choice of whether to exercise pendent personal jurisdiction over a claim is left to the discretion of the court. *Id.* at 1273. However, complications arise where the Court loses the anchor claim. By way of analogy, the *Botefuhr* court explains that when a district court dismisses federal claims and thereby leaves only supplemental state claims, courts most commonly dismiss the supplemental claims. *See id.* at 1273–74. Using this analogy, the Tenth Circuit panel found that the district court abused its discretion when it kept a pendent claim after the parties voluntarily dismissed the anchor claim as "there was no claim before the district court for which it could be said [the defendants] had 'minimum contacts' with [the forum State]." *Id.* at 1274.

The problem that arises here is that the state law and federal claims are mutually dependent. Without the state law claims, there would be no personal jurisdiction over the defendant. And without the federal claims, there would be no subject matter jurisdiction over the state law claims. Technically, I suppose I could find that the actions are so interconnected that each type of claim, and thus each type of jurisdiction, holds the other up, a tension bar of sorts. However, I'm not persuaded. The exercise of pendent personal jurisdiction is discretionary. In a case such as this, where neither set of claims could survive on its own, it feels fundamentally unfair to rely on each set of independently deficient claims to subject the defendant to jurisdiction in Colorado.

More importantly, it seems logically inapt to look past the claims over which this Court asserts original jurisdiction in order to determine whether it can maintain those claims. Independently analyzing the federal claims, the Court must dismiss this action for lack of personal jurisdiction. In turn, the supplemental state law claims must likewise be dismissed.

**CONCLUSION**

In conclusion, the Court finds that there is no personal jurisdiction over ASA pursuant to the federal claims, the only claims over which this Court has original jurisdiction.  The Court must therefore dismiss these claims, and in turn dismiss the supplemental state law claims that piggy-backed their jurisdiction onto the federal ones.  Insofar as the claims could arguably be maintained through a crisscrossing web of pendent subject matter and personal jurisdiction, the Court declines to exercise such discretion.

## ORDER

For the foregoing reasons, Defendant's Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue [ECF No. 30] is GRANTED.  It is further ORDERED that the case be DISMISSED WITHOUT PREJUDICE.

DATED this 29th day of August, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge